# Abdul Hassan Law Group, PLLC
## 215-28 Hillside Avenue
## Queens Village, New York, 11427

~~~~

**Abdul K. Hassan, Esq.**  Tel: 718-740-1000
Email: abdul@abdulhassan.com  Fax: 718-740-2000
*Employment and Labor Lawyer*  Web: www.abdulhassan.com

**February 16, 2021**

**Via ECF**

Hon. Lois Bloom, USMJ
United States District Court, EDNY
225 Cadman Plaza East
Brooklyn, NY 11201
Tel: 718-613-2170

<u>Re: Burton v. City Lumber, Inc.</u>
Case No. 20-CV-03290 (LDH)(LB)
Motion for Settlement Approval

Dear Magistrate-Judge Bloom:

My firm represents plaintiff Derrick Burton ("Plaintiff" or "Burton") in the above-referenced action, and I respectfully write to seek approval of the settlement reached by the parties as per Your Honor's February 2, 2021 order. Exhibit 1 is a copy of the fully executed settlement agreement. Exhibit 2 is the time records detailing hours expended by Plaintiff's counsel on this case – Plaintiff's counsel is a solo practitioner, and he was the only attorney that worked on this case for Plaintiff. Exhibit 3 are the costs receipts in this case and Exhibit 4 is a copy of the retainer agreement between Plaintiff and his counsel.

The claims are more fully set forth in the complaint. (See ECF No. 1). In essence, however, Plaintiff brought claims for unpaid wages on his lunch time claim under the FLSA and NYLL as well as related claims for wage notice and wage statement violations.

In general, allegations and facts are refined as information is exchanged in the case – this is especially true in wage cases where the employer has an obligation under the FLSA and NYLL to keep and maintain wage, time, and employment records. Moreover, the allegations and claims were further refined after extensive discussions, and exchange of information at the mediation conducted by an experienced FLSA mediator – Mr. Raymond Nardo.

1

Based on the information available at this time, Plaintiff is owed unpaid overtime wages on his claim for unpaid lunch time of approximately $5,803 – Defendant implemented its lunch time policy in February 2019.

It is Defendants' position that even if there was a deduction for lunch where Plaintiff did not punch in and out for lunch, under the union's Collective Bargaining Agreement, they were authorized to deduct time for lunch. If Defendant proves the good-faith affirmative defense, it may be able to avoid the imposition of liquidated damages. Defendant also disputes the work hours alleged by Plaintiff. In general Defendant deny Plaintiff's allegation that he is owed wages.

Assuming Plaintiff prevails on his wage notice and wage statement violations he could be entitled to another $10,000 maximum – the jurisprudence concerning these claims is unsettled and they are not covered by the FLSA. Plaintiff was provided with wage statements – there may be a technical dispute as to whether the wage statements were fully compliant.

The settlement agreement contains mutual general releases covering all employment claims. The broader release is appropriate because of potential termination claims, and the settlement amount was higher because of the broader release bargained for – especially given Defendant's position that Plaintiff is not owed any wages and the fact that Plaintiff is also receiving a release under the settlement agreement. See i.e. *Hixholli v. Aqua 3065 GC LLC et al*, Case Number 19-CV-05654, ECF No. 35, page 2 ¶ 1, (Judge Netburn - SDNY, November 25, 2019)(approval of FLSA settlement agreement with mutual releases); *Contreras v. GM6 Residential Services, LLC et al*, Case No. 18-CV-12148, ECF No. 23-24, (May 23, 2019)(approval of FLSA settlement agreement with mutual releases); *Hidalgo v. Villiford Realty Corporation*, Case No. 18-CV-10017, ECF No. 23, (April 22, 2019)(approval of FLSA settlement agreement with mutual releases).

Under the settlement Plaintiff is due to receive $9,485 after a 1/3 contingency fee of $4,742, and reimbursement of $773 in filing ($400), service ($73) and mediation ($300), costs. (Ex. 1 ¶ 2(a-c)).

Here, the hourly fees based on the attached time records (Ex. 2), are $12,774 at the retainer rate of $600/hr for 21.29hrs or $10,645 at a reduced rate of $500/hr. See *Saravia v. Royal Guard Fence Co., Inc. et al,* 19-CV-02086 (Judge Locke EDNY – December 14, 2020)(awarding Mr. Hassan a 500/hr. rate in the context of a fee-shifting fee application and stating "I would note that there was no opposition to the $500 per hour fee and I think that fee is quite appropriate even if there was opposition. So let me just put that on the record."); *Almond v. PJ Far Rockaway, Inc.*, 2018 WL 922184, at 1 (E.D.N.Y. Feb. 15, 2018) (awarding Mr. Hassan a 450/hr rate in the context of a fee-shifting fee application and noting that "Hassan has been practicing law since 2001 (17 years) and has litigated over 400 employment and wage cases in federal court. He has argued a number of significant employment cases before the Second Circuit.").

Under the settlement, Plaintiff's counsel is receiving a 1/3 contingency fee of $4,742, and reimbursement of $773 in filing ($400), service ($73) and mediation ($300), costs. (Ex. 1 ¶ 2(c))[1].

Because Your Honor regularly handles motions for approval filed by Plaintiff's counsel herein, some clarification on certain issues may be helpful. First, the threshold question in determining fees an attorney is owed by his client is what is the authority or basis for determining such fees. In this regard, the U.S. Supreme Court in *Venegas* has reminded us that the right to fees under a fee-shifting g statute belongs to a client and not the attorney – and that an attorney can rely on his retainer agreement to obtain fees from his client. For example, if the lodestar fees under a fee-shifting statute is $10.00 but the lawyer is only entitled to $5.00 under the retainer agreement, the court cannot direct the client to pay the attorney more fees than the $5.00 he is entitled to under the retainer agreement. It is important to correctly set forth the law and authority for determining fees an attorney is entitled to receive from his client. This issue in many ways is similar to the 1/3 percentage fee issue that was recently decided by the Second Circuit in *Fisher* after widespread misapplication in the district courts.

In response to *Venegas*, this Court has often cited *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226 (S.D.N.Y. 2016). In *Gurung*, the court in essence held that the FLSA fee jurisprudence was different from fee jurisprudence under other employment and civil rights statutes and the court adopted a 1/3 percentage fee standard. However, in *Fisher v. SD Prot. Inc.,* 948 F.3d 593 (2d Cir. 2020), the Second Circuit rejected the holding and reasoning in *Gurung*. Specifically, the Second Circuit in *Fisher* agreed with the arguments of Plaintiff's counsel herein made in many other cases and held that the type of 1/3 fee percentage standard like that in *Gurung* violated the FLSA and actually hurt the very workers the FLSA was designed to protect - by making it more difficult for them to obtain legal counsel, etc. The Second Circuit in *Fisher,* 948 F.3d 593 (2d Cir. 2020), also rejected the reasoning in *Gurung* when it relied not only on "the text and purpose of the FLSA" but also on "longstanding case law interpreting other similar fee-shifting statutes in the civil rights context," in applying the FLSA under *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015) – such longstanding case law includes the application of *Venegas* which holds that fees that a plaintiff owes his counsel is governed by the retainer agreement and not by statutory fee-shifting provisions.

---

[1] See *Venegas v. Mitchell*, 495 U.S. 82, 89-90 (1990). Plaintiff' Counsel's retainer rate is $600 and the retainer agreement with Plaintiff states in relevant part as follows:

The amount of Attorney's contingency fee will be the greater of:
(a) A reasonable percentage fee which is one-third (1/3) of all sums recovered on Client's behalf; or

(b) A reasonable hourly fee which is the amount of Attorney's hourly rates as laid out below times the number of hours spent by the Attorney on Client's behalf; or

(c) A separate recovery of fees such as where a court or other tribunal awards attorney's fees or where a defendant(s) settles a demand for fees.

See also *Brown v. Starrett City Associates*, 2011 WL 5118438, 8 (E.D.N.Y.), the court, citing *Venegas*, also noted that even when a court makes a lodestar fee award, "The award is then subject to whatever private contractual agreement exists between plaintiff and his or her counsel."

This Court has also cited *Seck v. Dipna Rx, Inc.,* No. 16-CV-7262 (PKC), 2017 WL 1906887, (S.D.N.Y. May 8, 2017). Although the Court in *Seck* also appeared to apply the 1/3 fee standard invalidated by the Second Circuit in *Fisher*, unlike the court in *Gurung*, the court in *Seck* in response to *Venegas v. Mitchell*, 495 U.S. 82, 89-90 (1990), did also correctly state as follows *Seck* 2017 WL 1906887, at 3:

> [Hassan] correctly notes that a fee-shifting statute awards fees to the plaintiff, not to the plaintiff's lawyer. Venegas v. Mitchell, 495 U.S. 82, 89-90 (1990). A party's contractual commitment to his or her attorney may require a payment that is higher than what a court may award as a reasonable fee under a fee-shifting statute.

By way of reinforcement, we did not need *Venegas* to remind us of the settled rule that a lawyer's right to fees from his client comes from the retainer agreement between the lawyer and his client and the client's right to fees come from the fee shifting provision of the statute.

As the U.S. Supreme Court also reminded us in *Venegas*, a retainer fee is not unreasonable simply because it is higher than a statutory fee. Like almost every other business, law firms are businesses which set a price for their services based on a variety of factors such as operating costs, risks, demand for services and profit expectations, etc. As such, rates under retainer agreements are usually higher than rates under fee-shifting statutes which are based on many different factors such as those set forth in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir.2008). For example, in *Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 26 (N.D.N.Y. 2015), Mr. Paul Clement, the well-respected Supreme Court litigator, had a retainer rate of $1100 an hour but was awarded only $300 an hour following a fee application in that fee-shifting civil rights case. That the fee-shifting rate the defendant in *Osterweil* had to pay Mr. Clement was $300, does not mean that the $1100 rate the civil rights plaintiff in that case agreed to pay Mr. Clement was unreasonable or unconscionable– especially given Mr. Clement's skill, reputation and experience, if his client agreed to pay him that retainer rate. Mr. Hassan's retainer rate herein is $600 an hour. In one of Plaintiff Counsel's prior FLSA cases, the lead defense attorney was charging $730 an hour, even though he had litigated far less than half the more than 700 employment/FLSA cases Plaintiff's counsel Hassan in this case has litigated in federal court. See *Young v. Joy Construction Company Inc.* et al, Case No. 15-cv-02642, ECF No. 41-3. Also, in *Cohen v. Gerson Lehrman Grp., Inc.*, No. 09 CIV. 4352 PKC, 2011 WL 4336677, at fn 2 (S.D.N.Y. Sept. 15, 2011), the lead plaintiff's attorney in that FLSA case was charging $750/hr. In fact, in *Gonzalez v. Scalinatella, Inc.,* 112 F. Supp. 3d 5, 26–27 (S.D.N.Y. 2015), the Court noted that "in 2012 a court in this district approved a $550.00 rate for a mid-size firm partner in an FLSA case (Outten & Golden) ... and the Second Circuit subsequently affirmed that decision." The court in *Gonzalez* 112 F. Supp. 3d at 26–27, also noted that another plaintiff's attorney in an FLSA case was awarded $600/hr.

Notably, the fact that an attorney is entitled to a higher fee under the retainer agreement does not mean that he will eventually charge or be paid such a higher fee – attorneys routinely reduce fees in order to facilitate settlement and improve client satisfaction. Here for example, Plaintiff's counsel has agreed to accept the much lower 1/3 percentage fee even though he is entitled to a much higher hourly fee – although under Fisher a court cannot impose a lower 1/3

4

fee, an attorney can choose to accept a lower 1/3 fee at his discretion. Moreover, the client also has the sole right to settle a case – further resulting in compromises by the attorney in order to facilitate settlement. Nonetheless, it is important to address the distinction between fees that a defendant is obligated to pay under the fee-shifting statute and fees that the Plaintiff is obligated to pay his attorney under the retainer agreement. This is not a distinction that was first put forth by Plaintiff's counsel – this is a significant distinction that was made by the highest court in the land in a unanimous decision in *Venegas*, based primarily on the text of the fee-shifting statutes and the rights of plaintiffs to obtain legal counsel of their choice – FLSA plaintiffs have the same right of choice and the text of the FLSA fee-shifting provision is almost identical and is not materially different from the text of the fee-shifting provisions of other employment/civil right statutes, especially in light of the Second Circuit's analysis in *Fisher*.

This Court has also raised an issue in the past about clerical versus legal work. In *Lilly v. City of New York*, 934 F.3d 222 (2d Cir. 2019), which this Court cited in this regard, the clerical work was exemplified by work such as faxing, copying, etc. Notably, in my *Cheeks* submissions, I do not bill for such work. Significantly, however, ECF filing is a task to be performed by attorneys and is subject to Rule 11. Likewise, reviewing affidavits of service for legal compliance, preparation of pleadings and coordination of process of service, as well as preparation of legal notices of claim, etc. are inherently important legal tasks that attorney can reasonably perform and may even be required to perform, and he may be subject to malpractice if these tasks are not done properly.

Given the responsibilities and standards of conduct imposed on an attorney, attorneys are allowed discretion and judgment in determining what constitutes legal work – the lines are not always clear, and whether to personally do such work or have it done by a lower-level attorney or paralegal, etc. under their supervision. The central question is not whether the work could have been done by someone else, it is whether it was reasonable for the attorney to perform the work. The question is also not whether the judge would have managed or assigned work differently if he/she was handling the case – it is whether it was reasonable for the attorney to handle it the way he did even other would have handled it differently. Moreover, clients, vendors, opposing counsels, defendants, etc. are very picky and sensitive about wanting to deal only with the attorney and not with others, and often insist on dealing with only the lead attorney or firm owner even as to matters that can be done by secretarial staff. Also, the Second Circuit has cautioned district courts not to create a hypothetical law firm with employees that do not exist in order to assign lower rates for work reasonably performed by the attorney. See i.e. *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund,* 450 F.3d 91, 99 (2d Cir. 2006)(" There is simply no support for the proposition that a district court can decide what legal tasks could have been done by a hypothetical associate attorney working for or with Pauk in order to calculate a blended hourly rate of $390, especially where, as here, the blended rate applied only to attorney time (not paralegal or secretarial time).").

Plaintiff's counsel has received similar or higher legal fees in other FLSA settlements approved by courts. See *Castillo v. Cranes Express Inc. et al*, Case No. 18-CV-01271 (PKC)(LB)(Magistrate-Judge Bloom's R&R – December 12, 2018)(approving a 1/3 contingency fee of $23,079 under *Cheeks*); *Andrea Carter v. Long Island Care Center, Inc.*, Case No.15-cv-4058 (PKC)(VMS), (February 19, 2016 text only order – 1/3 fee under *Cheeks* of about

$27,000); *Hysa et al v. Midland Electrical Contracting Corp. et al*, Case No. 13-CV-6837 (Chief Magistrate-Judge Mann, January 2016 - approving 1/3 fee of $103,607.94 under *Cheeks*); *Kolenovic v. FSM Management, Inc. et al,* Case No.18-cv-00657(Judge Oetken – June 28, 2018)(approving a 1/3 fee of $20,000 under *Cheeks*); *Persaud v. Consulate General of Guyana in New York et al*, Case No. 16-cv-01755 (approving 1/3 fees of $23,080 under *Cheeks*); *Hosein v. Universal Elevator Inc. et al,* Case No. 17-cv-07597-(Judge Cogan)(approving a 1/3 percentage fee of $16,995 under *Cheeks*); *Kevin Lynch v. Consolidated Edison, Inc.*, Case No. 16-CV-1137, ECF No. 37 (Judge Furman - approving 1/3 fees of $14, 826 under *Cheeks*)("the Court sees no basis to reduce the fee where, as here, there are no opt-in plaintiffs, the case is not a collective action, and the attorney's fee award is based on an agreement between Plaintiff and his attorney.").

In the circumstances of this case, the settlement is fair and reasonable for several reasons. First, Defendant disputes liability and if a jury believes Defendant, Plaintiff may receive nothing or a lot less especially in light of the legal and factual issues. Second, the amount Plaintiff is due to receive under the settlement, covers the wages claimed by Plaintiff. Third, there appears to be a desire by all parties to resolve the case early and avoid the significant financial and non-financial costs/harms of litigation.

Therefore, it is kindly requested that this Honorable Court approve the settlement agreement as fair and reasonable.

Respectfully submitted,

Abdul Hassan Law Group, PLLC

 /s/ Abdul Hassan
By: Abdul K. Hassan, Esq. (AH6510)
*Counsel for Plaintiff*

**cc:    Defense Counsel via ECF**