```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DERRICK BURTON,

                        Plaintiff,                              REPORT AND RECCOMENDATION
                                                                20 CV 3290 (LDH) (LB)
        -against-

CITY LUMBER, INC.,

                        Defendant.
-------------------------------------------------------------X
```

**BLOOM, United States Magistrate Judge:**

Plaintiff Derrick Burton brings this action against City Lumber Inc., alleging that defendant violated his rights under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") by failing to pay him proper overtime wages and by failing to provide him with proper wage notices and statements. See Complaint, ECF No. 1. The parties now move for settlement approval pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015). ECF No. 13 [hereinafter "Settl. Mot."]. The motion was referred to me by the Honorable LaShann DeArcy Hall for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the reasons set forth below, the settlement agreement [hereinafter "Settl. Ag." or "Agreement"] should not be approved as currently written because the release of liability provision is impermissibly broad.

## BACKGROUND

Plaintiff was employed as a delivery person for City Lumber Inc., a company in the business of distributing and warehousing building supplies. Compl. ¶¶ 10, 12. Plaintiff worked for defendant "about 45-60 hours or more each week . . . 5–6 days a week." Compl. ¶ 15. Plaintiff's complaint alleges that,

> "At all times relevant herein, Defendant had a policy and practice of deducting from the work time of Plaintiff, about 30 minutes for a meal/lunch period daily. However, due to the demands of Plaintiff's job, Plaintiff did not receive a bona fide meal break within the meaning of the FLSA and NYLL. As a result of this unlawful wage deduction, Plaintiff is owed overtime wages for about 2.5 to 3 overtime hours or more each week during his employment with Defendant."

1

Compl. ¶ 14. In addition to the overtime owed due to the lunch break deductions, plaintiff alleges that defendant failed to pay him overtime pay for all hours worked in excess of 40 hours per week. Compl. ¶ 17. Plaintiff's complaint seeks to recover his unpaid wages, liquidated damages, fees, and costs. Compl. ¶¶ 77–83.

## PROCEDURAL HISTORY

Plaintiff commenced this action by filing his complaint on July 22, 2020. ECF No. 1. Defendant filed its answer on September 18, 2020. ECF No. 9. The parties engaged in Court annexed mediation and on February 1, 2021, announced that they had reached a settlement in principle. ECF No. 12. The parties now move for Court approval of the settlement, ECF No. 13.

## DISCUSSION

The Court focuses its analysis on the release of liability provision in the settlement agreement as that provision precludes the Court from approving the Agreement.

I. <u>Standard for Analyzing Release Provisions in FLSA Settlements</u>

"Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." <u>Cheeks</u>, 796 F.3d at 206. In FLSA cases, Courts in this District routinely reject settlement agreements with release provisions that "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." <u>Lopez v. Nights of Cabiria, LLC</u>, 96 F.Supp.3d 170, 181 (S.D.N.Y. March 30, 2015); <u>see also</u> <u>Garcia v. Jambox, Inc.</u>, No. 14 Civ. 3504 (MHD), 2015 WL 2359502, at *3–4 (S.D.N.Y. April 27, 2015) (provision releasing defendants "from any and all charges, complaints, claims, and liabilities of any kind whatsoever" was "not 'fair and reasonable' because it encompasse[d] far too broad a range of possible claims").

The Second Circuit has noted that such an "overbroad release," like the one in *Nights of Cabiria*, "highlights the potential for abuse in [FLSA] settlements, and underscores why judicial

approval in the FLSA setting is necessary." Cheeks, 796 F.3d at 206 (citing Nights of Cabiria, 96 F.Supp.3d at 181). "In the context of a FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." Camacho v. Ess–A–Bagel, Inc., No. 14 Civ. 2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014).

Even when a general release provision is presented as "mutual," that does not save the agreement. Gurung v. White Way Threading, LLC, 226 F.Supp.3d 226, 229 (S.D.N.Y. December 8, 2016) ("The fact that the general release is styled as mutual, although favoring the settlement, does not salvage it, absent a sound explanation for how this broad release benefits the plaintiff employee."); see also Flores–Mendieta v. Bitefood Ltd., 15 Civ. 4997 (AJN), 2016 WL 1626630, at *2 (S.D.N.Y. April 21, 2016) (reciprocity does not save a release agreement which would allow employers to use a FLSA settlement to erase all liability whatsoever in exchange for payment of wages allegedly required by statute.) (citation omitted). "When a district court concludes that a proposed settlement in a FLSA case is unreasonable in whole or in part, it cannot simply rewrite the agreement, but it must instead reject the agreement or provide the parties an opportunity to revise it." Fisher v. SD Protection Inc., 948 F.3d 593, 597 (2d Cir. 2020).

II. The Liability Release Provisions

The provision of the Agreement releasing defendant's liability states that plaintiff releases defendant from "any and all rights, causes of action, claims or demands, whether express or implied, known or unknown, that arise on or before the date that Burton executes this Agreement." Settl. Ag. ¶ 4. The Agreement states that this release applies to claims and causes of action arising under a non-exhaustive laundry list of 20 different statutes and common-law theories. Id. Elsewhere, the Agreement provides that defendant, who "believes it possesses actionable claims against Burton," releases him from "any and all claims, debts, obligations, or liability whatsoever, whether known or unknown . . . as of the date of execution of this Agreement." Settl. Ag. ¶ 2.g.

3

This mutual general release is either the same or very similar to the releases that were rejected by the Courts in *Gurung* and *Flores-Mendieta*. Plaintiff's counsel should be intimately aware of the rejected agreement in *Gurung* because he was the plaintiff's attorney who sought settlement approval in that case.

Both this case and *Gurung* involve settlement agreements with mutual, general releases where the plaintiff would release claims arising under a non-exhaustive list of different statutes and theories. Both settlement motions argue that such general releases should be approved because they are mutual and were bargained-for with extra consideration.[1] This argument was not enough to convince Judge Engelmayer to approve the settlement in that case, and it is not enough to convince me here.

In *Gurung*, Judge Engelmayer expressed concern that while such broad releases are stated to be reciprocal, "their practical effect in some cases may be lopsided because they may stand to benefit only the employer defendant, who realistically may be less likely than the employee plaintiff to have latent claims against its adversary." Gurung, 226 F.Supp.3d at 229. With regard to Gurung specifically, Judge Engelmayer writes that the benefit of the mutual release to the plaintiff is unclear, and therefore seems to be "one-sided as a matter of economic substance." Id. The agreement there could be saved by a narrower release or a persuasive explanation of the benefit to the plaintiff. Id.

Plaintiff's counsel in this case does not demonstrate how the release provision at issue benefits Burton, nor why the release is not economically one-sided. Counsel makes no attempt to distinguish this agreement from the one rejected in *Gurung*. The only difference between his arguments for the general releases in both cases is that in this case counsel specifically alleges that

---

[1] Plaintiff's counsel argues in his motion for settlement approval in this case that "[t]he broader release is appropriate because of potential termination claims, and the settlement amount was higher because of the broader release bargained for . . . ." Settl. Mot. The settlement agreement at issue in *Gurung* stated "[a general release] is appropriate in this case where 1) the general release is with Plaintiff's consent; 2) the releases are mutual; and 3) the general release in favor of Defendant is supported by additional consideration." Gurung, 16-CV-1795-PAE, ECF No. 32.

the defendant "believes it possess actionable claims against Burton." Settl. Ag. ¶ 2.g. The addition of this one vague sentence in the instant motion is not enough to assuage this Court of the concerns raised by Judge Engelmayer in *Gurung*. Because defendant does not allege what claims it could possibly have against Burton, and the existence of such claims is not even alluded to anywhere else on the record, it is unclear what benefit Burton gets from such a release. Thus, this release by defendant seems to be an empty gesture, just like the one in *Gurung*, and all of the Court's concerns regarding unequal bargaining and economic substance apply here equally.

In his motion plaintiff's counsel cites three of his cases in the Southern District where settlement agreements with mutual general releases have been approved: Hixholli v. Aqua 3065 GC LLC et al, 19-CV-5654, Contreras v. GM6 Residential Services, LLC et al, 18-CV-12148, and Hidalgo v. Villiford Realty Corporation, 18-CV-10017. In all three cases, the settlement agreement is adopted in a one-page Order entered by the District Judge. See Hixholli, 19-CV-5654, ECF No. 36; Contreras, 18-CV-12148, ECF No. 24; Hidalgo, 18-CV-10017, ECF No. 25. In only one case, *Contreras*, does the judge mention the release provisions, noting there that the plaintiff is being released from two housing court judgments worth about $23,000. Contreras, 18-CV-12148, ECF No. 24. Similarly, the agreement in *Hixholli* provides plaintiff with a release from the defendant's claim in housing court to at least nine months of unpaid rent. Hixholli, 19-CV-5654, ECF No. 35. The facts of these cases therefore would likely satisfy the Court's request for a more persuasive explanation of the benefit to plaintiff. Gurung, 226 F.Supp.3d at 229. While the agreement in *Hidalgo* is functionally identical to the Agreement in this case, in that there is no specific claim being given up by the defendant, the Court declines to follow the District Judge's one-page unpublished order in that case.

### III. The Rest of the Agreement

Because the liability release provisions of the Agreement are overbroad, the Court does not consider the rest of the Agreement, although it notes that it does not find the Agreement objectionable on its face.[2]

## CONCLUSION

Having previously been denied settlement approval in *Gurung*, it appears that plaintiff's counsel simply added one conclusory sentence to his overbroad release in an attempt to sneak the same Agreement past this Court. Because the liability release provisions of the Settlement Agreement do not satisfy the requirements of *Cheeks*, I recommend that the motion for settlement approval should be denied without prejudice. The parties should be given 30 days to refile the motion with a release tailored to the claims in plaintiff's complaint.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 46 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140, 152 (1985).

SO ORDERED.

                                            /S/
                                      LOIS BLOOM
                                      United States Magistrate Judge

Dated: March 22, 2021
       Brooklyn, New York

---

[2] Indeed, the Court would likely recommend that the motion for settlement approval should be granted, if not for the overbroad release provision.